## KROFF v. AMRHEIN ET AL.

*Adopted children — Descent of property of foster parents — Parents survive adopted child — Who dies intestate, leaving married daughter — Latter devises property to husband — Foster parents having died intestate — Sections 8029 and 8030, General Code.*

1. The primary and paramount purpose of Section 8029, General Code, is to make an adopted child the equal of a natural child "to all legal intents and purposes."
2. This same purpose is further evidenced and emphasized in Section 8030, General Code, which invests such adopted child with "all the rights and privileges" of a child of the blood or a child begotten in lawful wedlock.
3. The only limitation put upon an adopted child is in the last sentence of Section 8030, General Code, which provides in substance that if the death of the adopted child occur subsequently to the death of the adopting parents, and such adopted child be "without issue," then, and in that event, the line of heirship reverts back to the adopting parents.

(No. 14997 — Decided May 29, 1916.)

ERROR to the Court of Appeals of Lucas county.

In November, 1876, Simon and Otilley Fearsettle legally adopted Mattie Stein, afterwards known as Mattie Fearsettle.

Mattie Fearsettle married one Fred Hamley.

In February, 1912, Mattie (Fearsettle) Hamley died, intestate, leaving surviving her daughter, Hester Hamley; her husband, Fred Hamley, and her foster parents, Simon and Otilley Fearsettle.

Thereafter Hester Hamley married Norman G. Amrhein, defendant in error.

In June, 1914, Otilley Fearsettle died, intestate, and in August, 1914, Simon Fearsettle died, in-

testate, possessing fee simple title to the property in dispute.

In January, 1915, Hester Hamley Amrhein died, testate, devising all her property to her husband, Norman G. Amrhein, her only surviving heir at law.

Plaintiff in error, Frederick C. Kroff, is a half-brother of Simon Fearsettle.

*Mr. Allen J. Seney,* for plaintiff in error.

*Mr. Amos L. Conn,* for defendants in error.

WANAMAKER, J.  A and B are husband and wife, but childless.  Pursuant to the laws of Ohio they adopt one C as their daughter.  C subsequently marries D and has issue in a daughter, E.  E marries F.  C's decease is prior to A's and B's. A and B die in 1914, intestate.  In 1915 E dies testate, willing all her property, including real estate from A and B, to her husband, F.  Does F thereby take any title to A's and B's lands?  The lower courts decided in favor of F.  To reverse that judgment error is prosecuted here.

The answer to this question must be found in our statutes of adoption and descent.  Adoption of C is admittedly regular.  What do the statutes declare to be the legal effect of such adoption?

Section 8029, General Code, in part reads as follows: "When the foregoing provisions [statutory steps to adoption] are complied with, if the court is satisfied  *  *  *  it shall make an order setting forth the facts, and declaring that, from that

date, *to all legal intents and purposes,* such child is the child of the petitioner," etc.

To layman and lawyer it should be perfectly plain that the legislative intent here expressed was to make such adopted child the equivalent of a natural child of the adopting parents, otherwise what could have been the purpose of such adoption and what the meaning of the words "such child is the child of the petitioner  *  *  *  to all legal intents and purposes."

Such simple, sweeping language would seem sufficient *per se* to invest the adopted child with all the rights and privileges of the natural child. Lest there be any doubt in the minds of the superstrict as to the legal sense and scope of this last clause of Section 8029, General Code, the legislature further enacted to like effect Section 8030, General Code, which reads in part: "Such child shall be the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock."

It will be noted that the statute provides that, (1) An adopted child "shall be the child and legal heir of the person so adopting" and (2) An adopted child shall have "all the rights and privileges  *  *  *  of a child of such person begotten in lawful wedlock."

If legal language is capable of clearness and certainty, surely so far there can be no doubt that the foregoing statutes fully and effectively invest the adopted child with all the rights and privileges of a natural child begotten in lawful wedlock.

But it is cogently contended that this investment of the adopted child with all the rights and privileges of a natural child born in lawful wedlock is later cut down by language equally clear, by virtue of which an adopted child is divested of some of the rights of inheritance or descent of a natural child.  The provision relied on is the last clause of said Section 8030, General Code, which reads: "But on the decease of such person [the adopting parent] and the *subsequent* decease of such adopted child *without issue,* the property of such adopting parent shall descend to his or her next kin, and not to the next kin of such adopted child."

We are asked to interpret this provision.

Now, the right to judicially interpret a duly enacted statute is based upon some apparent uncertainty of meaning, some apparent ambiguity of terms, some apparent conflict of provision.  If a sentence of a statute can be set forth in simple speech, the same has been done in the provision last quoted.  To interpret what is already plain is not interpretation but legislation, no matter by what name it may be called.

Analyze this divesting sentence.  The conditions precedent to the application of this last provision are as follows:

1. The adopted child's decease must be subsequent to the decease of the adopting parents.

2. The adopted child must have no issue.

There is a total failure of these two conditions precedent under the conceded facts of this case. First, the adopted child's decease was prior to the death of the adopting parents, and, second, she

left surviving her and surviving the adopting parents issue in E, her daughter, who subsequently married F, who was made sole devisee by the will of E, the devise including the property of the ancestors, A and B.

The self-evident purpose of this divesting provision of Section 8030, General Code, is that if there be a failure of issue of the adopted child then the new line of descent provided for by the adoption statutes ceases and the property reverts back to the blood of the ancestor; but as long as there was issue of the child, such issue should take as "the child and legal heir."

Again this divesting provision is an exception grafted on to the statute. The statute being remedial, naturally the exception should be strictly, but reasonably, construed and must be governed by the familiar rule that the exclusion clearly made in the exception only emphasizes the inclusion of all other things germane to the statute which are not so excluded.

The contention is made here that the words "all the rights and privileges" as used in the statute mean only personal rights and privileges, but there is no warrant for thus cutting down or cutting out the word "all," and the courts should apply the language in the broad and humane spirit in which it was written into the law and policy of this state.

The humanitarian policy of these laws has been discussed in *Ransom, Admr.,* v. *The New York, Chicago & St. Louis Ry. Co.,* 93 Ohio St., 223, which case at bottom involves many of the same legal principles as are here presented.

In this view of the case we find no error in the judgment below and the same is therefore affirmed.

*Judgment affirmed.*

NICHOLS, C. J., JOHNSON, DONAHUE, NEWMAN, JONES and MATTHIAS, JJ., concur.